ACLU of Eastern Missouri
454 Whittier Street
St. Louis, Missouri 63108
314.652.3114
314.652.3112 (fax)

www.aclu-em.org

OFFICERS AND DIRECTORS

Mondi Ghasedi
President

Percy Green
Thomas Hayde
Vice Presidents

Terry Bloomberg
Treasurer

Daron Smith
Secretary

STAFF

Brenda Jones
Executive Director

Anthony E. Rothert
Legal Director

Grant R. Doty
Staff Attorney

John Chasnoff
Program Director

Vicki White
Development Director

Debbie Read
Executive Assistant

Scott Emanuel
Development Associate

Redditt Hudson
Program Associate



May 24, 2011

Tim Hadfield
Superintendent
Camdenton R-III School District
P.O. Box 1409
Camdenton, Missouri 65020

By First Class Mail and Facsimile to (573) 346-9211

Dear Mr. Hadfield,

As part of its "Don't Filter Me" initiative, the ACLU has received complaints from students across the country that their school district's filtering software has been configured to improperly censor websites advocating the fair treatment of lesbian, gay, bisexual, and transgender ("LGBT") persons or reflecting the viewpoints of LGBT people. We have found that filtering software frequently includes a filter that is designed specifically to block access to LGBT-related materials that would not otherwise be blocked as sexually explicit or pornographic.

We have received complaints that Camdenton R-III School District blocks access to educational LGBT websites and other resources supporting LGBT students. In response to a public records request from the ACLU, your school district confirmed that the district's filtering software blocks access to websites for Day of Silence, The Trevor Project, GSA Network, and Gay, Lesbian, Straight Education Network ("GLSEN") because they have been categorized as "sexuality" websites by the district's filtering software. *See* Exhibit A (attached).

Based on the information provided in response to the public records request, it appears that, as part of its own filtering software, the school district uses the database of website categories provided by the company "URL Blacklist." The "sexuality" category created by URL Blacklist is a severely flawed tool that censors virtually any content concerning LGBT people or representing LGBT viewpoints, in violation of the First Amendment and the Equal Access Act. On behalf of the ACLU and

the ACLU of Eastern Missouri, we are writing to alert you to this problem and request that the filter for "sexuality" be removed immediately.

We are also sharing a copy of this letter with the press in order to raise awareness about this issue. We hope that by promptly disabling the "sexuality" filter, your school district will set a positive example and prompt other school districts to make sure that similar filters have not been activated on their own filtering software.

I.     Factual Background About The "Sexuality" Filter.

In order to determine which websites to block, the programmers of web filtering software must use databases that group websites into different categories. Instead of creating the database from scratch, programmers can choose between several different databases maintained by third parties. *See* http://www.squidguard.org/blacklists.html (providing a list of databases to choose from).

It appears that your filtering system uses a database created by a company called "URL Blacklist." The database maintained by URL Blacklist was not compiled by educational professionals or specifically designed to serve the educational needs of students. Rather, the database is primarily an aggregation of other free "blacklists" available on the Internet. URL Blacklist specifically warns that "[t]he blacklist *does* contain sites which are wrongly categorised which is due to the bulk of the entries being collected using automatic scripts." http://urlblacklist.com/?sec=home. In addition, URL Blacklist states that "[t]he blacklist does not only contain sites that are considered 'bad' but it also contains many other categories that can be used as white or grey lists. Being listed does not infer that the site is 'bad' -- these are just lists of sites." *Id.*

Like most databases, URL Blacklist has categories called "adult" and "porn," which identify sexually explicit or pornographic content. These filters are viewpoint neutral and block websites regardless of whether they depict heterosexual or homosexual activity. We believe that enabling the "adult" and "porn" filters fulfills the district's obligations to block sexually explicit content pursuant to the Children's Internet Protection Act ("CIPA").

But URL Blacklist has an additional category called "sexuality," which is not viewpoint neutral and is not necessary to comply with CIPA. The "sexuality" filter blocks all LGBT-related content, regardless of whether the content is sexually explicit. This additional filter is not necessary to comply with CIPA because if a website containing LGBT material is also "adult" or pornographic, then the URL Blacklist software categorizes the website both as "sexuality" and as "adult" or "porn." As a result, schools can remove the "sexuality" filter while still filtering out LGBT-related content that is categorized as "adult" or pornographic under URL

Blacklist's other generally applicable categories.

At the same time, the "sexuality" filter blocks an enormous range of websites that are not sexually explicit or pornographic in any way. Below are some examples that reflect how the "sexuality" filter effectively erases LGBT people and LGBT viewpoints from the Internet. Sites blocked by the "sexuality" filter include:

- reference materials on sexual orientation from the American Psychiatric Association and the American Academy of Pediatrics;
- anti-bullying resources from GSA Network and GLSEN;
- reference information concerning the military's Don't Ask Don't Tell Policy;
- health resources from the Center for Disease Control and the National Institute of Health;
- webpages from the American Library Association and the New York Public library concerning LGBT literature;
- websites for advocacy and legal organizations such as for Love Makes a Family, Freedom to Marry, the No H8T Campaign, Parents and Friends of Lesbians and Gays, Lambda Legal, and the ACLU's LGBT & AIDS Project.

As I am sure you will agree, there is no pedagogical reason why any of these websites should be blocked.

## II. The Sexuality Filter Violates The First Amendment.

Your students have a First Amendment right to access the LGBT-related information that is being needlessly blocked by the "sexuality" filter. "[J]ust as access to ideas makes it possible for citizens generally to exercise their rights of free speech and press in a meaningful manner, such access prepares students for active and effective participation in the pluralistic, often contentious society in which they will soon be adult members." *Bd. of Educ. v. Pico*, 457 U.S. 853, 868 (1982) (plurality) (internal quotation marks and citations omitted); *see also Fricke v. Lynch*, 491 F. Supp. 381, 385 (D.R.I. 1980) (holding that First Amendment protects non-sexual expression of a student's gay sexual orientation).

The First Amendment does not require the school district to provide students with internet access, but once the school provides such access it may not selectively censor access to websites in a manner that discriminates against particular viewpoints. "[T]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993) (internal quotation marks and citation omitted). When a school "permits the discussion of a topic from [one] perspective, it may not shut out speech that discusses the same topic from a [different] perspective." *Child Evangelism Fellowship of N.J. Inc. v. Stafford Tp. School*

*Dist.*, 386 F.3d 514, 528 (3d Cir. 2004) (Alito, J.).

The "sexuality" filter is engages in unconstitutional viewpoint discrimination. Although the "sexuality" filter blocks any access to materials advocating for the fair treatment of LGBT people, the filter does not block sites that condemn homosexuality, urge LGBT to try to change their sexual orientation through so-called "reparative therapy," or oppose legal protections for LGBT people. For example, the filter does not apply to the websites for the Family Research Council, Parent and Friends of Ex Gays, People Can Change, National Association for Research & Therapy of Homosexuality, Exodus International, or the Alliance Defense Fund.

Indeed, many otherwise permissible topics are blocked by the filter solely because of their LGBT viewpoint. The filter does not block the website for the GOP but does block GOProud. The filter does not block the website for the Catholic Church but does block the website for Dignity USA. The filter even allows students to access the Supreme Court's decision in *Bowers v. Hardwick* (an anti-gay decision) but blocks them from accessing the Court's more recent opinion in *Lawrence v. Texas* (overturning *Bowers*).

The First Amendment requires Camdenton R-III School District to use a filtering software that does not "regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Lamb's Chapel*, 508 U.S. at 394. The "sexuality" filter does not satisfy these constitutional standards.

### III. The Sexuality Filter Violates The Equal Access Act.

In addition to violating students' First Amendment rights, the "sexuality" filter also violates the Equal Access Act because it denies student who are seeking to form gay-straight alliances ("GSAs") equal access to school resources that are generally available to other non-curricular clubs. *See* 20 U.S.C. § 4071 *et seq.*; *Mergens*, 496 U.S. at 247; *SAGE v. Osseo Area Schools Dist.*, 471 F.3d 908 (8th Cir. 2006); *Gonzalez v. Bd. of Educ.*, 571 F. Supp. 2d 1257 (S.D. Fla. 2008). The Equal Access Act mandates that, when a public secondary school that received federal financial assistance permits even one non-curricular group to use school resources, it must permit all other non-curricular student groups to do so, too, on equal terms. *See Mergens*, 496 U.S. at 237, 247 (requiring equal access to school newspaper, bulletin boards, public address system, and club fair); *Boyd County High Sch. Gay Straight Alliance v. Bd. of Educ.*, 258 F. Supp. 2d 667 (E.D. Ky. 2003) (school violated Equal Access Act by denying GSA clubs equal access to school bulletin board and intercom).

The Equal Access Act requires the Camdenton R-III School District to provide GSAs with equal access to all school resources -- including online resources -- that are made available to other non-curricular clubs. *See SAGE*, 471 F.3d at 912 (LGBT-related group must have "*equal* access to the same avenues of communication as

other noncurriculum related groups") (emphasis in original). The websites for GSA Network, GLSEN, and Day of Silence provide students with advice about how to establish a GSA at their school, suggestions for running an effective club, ideas regarding club activities, sample GSA club by-laws, and tips on how to work with teachers and administrators to address bullying and harassment in schools. But because the "sexuality" filter blocks access to those websites, students who seek to form GSAs in the Camdenton R-III School District cannot access those online resources. By contrast, students seeking to establish or develop activities for other non-curricular clubs such as the Key Club are able to access their clubs' websites through the schools' computers.

### III. Additional Considerations

Allowing students equal access to LGBT-related websites is not just a legal duty; it also makes sense from a safety perspective, particularly in light of the epidemic of LGBT youth suicides and bullying. Prohibiting access to LGBT websites is especially problematic because many students do not have computers or Internet access at home and can access the Internet only at school. As one court put it, "as any concerned parent would understand, this case [holding that members of the Gay-Straight Alliance must be permitted access to the school's resources in the same way as other clubs], may involve the protection of life itself." *Colin v. Orange Unified Sch. Dist.*, 83 F. Supp. 2d 1135, 1148 (C.D. Cal. 2000).

We wish to emphasize that unblocking individual LGBT-related websites upon request is not an appropriate solution to this problem. It is unfair and burdensome to force students to seek special permission every time they wish to access a website that reflects LGBT-related viewpoints when, in contrast, students may freely access other viewpoints without seeking such permission. Such unequal burdens violate the Equal Access Act and the First Amendment. Moreover, in the particular context of LGBT-related websites, requiring students to make individualized requests is especially harmful and counterproductive because it would force some LGBT students to risk "outing" themselves by requesting that a website be unblocked. There is no reason why the burden should be placed on a vulnerable population to affirmatively request that school administrators unblock websites for LGBT-resources that they already have a legal right to access.

### IV. Conclusion

In alerting you to this problem, we do not mean to accuse the school district of acting with animus toward LGBT students. Our experience in the "Don't Filter Me" initiative has shown that the majority of school districts are simply trying to educate their students while complying with their legal obligation to block pornographic content pursuant to CIPA. But, regardless of the subjective motivations of school officials, the configuration of the district's filtering software censors virtually all

LGBT-related speech and severely discriminates against viewpoints advocating for equal treatment of LGBT people. Camdenton R-III School District must configure its software in a manner that complies both with CIPA and with the First Amendment and Equal Access Act.

There are two different ways that Camdenton R-III School District can bring its filtering software in compliance with its legal obligations.

> First, the school could simply stop filtering websites categorized as "sexuality." As noted above, once the sexuality filter is removed, the vast majority of sexually explicit or pornographic websites would continue to be blocked by the "adult" and "porn" filters. To be sure, there is always a risk that an inappropriate website may slip through even the most comprehensive filtering system. In the unlikely event that a student accesses an inappropriate website, the school can step in to block the website at that time.

> Second, the school could use a different database as part of its web-filtering software that does not engage in illegal viewpoint discrimination. Other databases, do not categorize websites in a manner that singles out non-pornographic LGBT materials for special treatment. *See* http://www.squidguard.org/blacklists.html (providing a list of databases to choose from).

Whichever long-term solution Camdenton R-III School District adopts, the current status quo of blocking all "sexuality" websites is unacceptable.

Please contact us by May 31, 2011, to indicate whether you intend deactivate the "sexuality" filter and restore students' access to the websites for GSA Network, GLSEN, Day of Silence, The Trevor Project and similar LGBT-related resources. If you continue to censor these websites, you could be subject to legal liability and the expense of litigation, as the boards of education and superintendents of two Tennessee school districts that used a similar type of filtering software recently discovered. Ultimately, after being sued by the ACLU, both Tennessee school districts agreed to enter into a settlement agreement enforceable by the federal district court to stop blocking access of online information about lesbian, gay, bisexual, and transgender issues. *See Franks v. Metro. Bd. of Pub. Educ.*, No. 3:09- 00446 (M.D. Tenn. 2009).

Sincerely,

Anthony E. Rothert
Legal Director