UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| Parents, Families, and Friends of Lesbians and Gays, Inc., et al. | ) ) ) | |
| | ) | Case No. 2:11-cv-04212 |
| Plaintiffs, | ) ) | |
| v. | ) ) | PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO |
| Camdenton R-III School District, et al. | ) ) ) | DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE |
| Defendants. | ) ) | |

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE**

Mark Sableman #36276
A. Elizabeth Blackwell #50270
THOMPSON COBURN LLP
One U.S. Bank Plaza
St. Louis, Missouri 63101
314-552-6000
FAX 314-552-7000
msableman@thompsoncoburn.com

Anthony E. Rothert, # 44827
Grant R. Doty, # 60788
American Civil Liberties Union of Eastern
   Missouri
454 Whittier Street
St. Louis, Missouri 63108
314-652-3114
FAX 314-652-3112
tony@aclu-em.org
grant@aclu-em.org

Joshua A. Block
James Esseks
LGBT Project
ACLU Foundation
125 Broad Street, Floor 18
New York, New York 10004
(212) 549-2600
FAX 212-549-2650
jblock@aclu.org
jesseks@aclu.org

# TABLE OF CONTENTS

ARGUMENT .................................................................................................................3

I.      Plaintiffs Have Standing to Bring This Lawsuit ...........................................3

        A.      The Organizational Plaintiffs Have Standing ......................................3

        B.      Jane Doe Has Standing...........................................................................6

II.     Plaintiffs' Claims Are Not Moot Because the District Continues to Employ
        Filtering Software That Unconstitutionally Discriminates on the Basis of
        Viewpoint.........................................................................................................8

III.    Plaintiffs Have a Claim Against Defendant Hadfield in His Individual Capacity
        Because He Employed Viewpoint-Discriminatory Internet Filtering Software in
        Violation of Plaintiffs' Clearly Established Constitutional Rights ................11

IV.     The Court Has Discretion Not To Dismiss Claims Against Defendant Hadfield in
        His Official Capacity .....................................................................................14

V.      Plaintiffs Have Alleged Sufficient Facts Regarding the District's Unconstitutional
        Internet Filtering Custom and Policy to State a Claim Upon Which Relief May Be
        Granted............................................................................................................15

CONCLUSION.............................................................................................................17

CERTIFICATE OF SERVICE ....................................................................................19

# TABLE OF AUTHORITIES

**CASES**

*Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005)....................................................................9

*Am. Library Ass'n, Inc. v. United States*, 201 F. Supp. 2d 401, 415-16 (E.D. Pa. 2002)............................................................................................................................4, 6

*Ark. Writers Project Inc. v. Ragland*, 481 U.S. 221, 231 (1987)................................................6

*Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1182 (8th Cir. 1998)...........................................................................................................................14, 15

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).......................................................................3

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982)..........................................................................................................5, 7, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ..............................................................3

*Bernhardt v. County of Los Angeles,* 279 F.3d 862, 871 (9th Cir. 2002) ...................................10

*Besette v. AT&T Corp.*, 2006 WL 2927561 (W.D. Mo. Oct. 11, 2006) .......................................9

*Bolger v. Youngs Drug Prods Corp.*, 463 U.S. 60, 80 (1983)......................................................6

*Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009) ........................................................12, 13

*Bradburn v. N. Cent. Reg'l Library Dist.*; 231 P.3d 166, 171-72 (Wash. 2010)..........................3

*Brown v. Fortner*, 518 F.3d 552, 561 (8th Cir.2008)................................................................13

*Brown v. Montgomery County*, 2005 WL 1283577, at *4 (E.D. Pa. May 26, 2005)..................14

*Cent. Platte Natural Res. Dist. v. U.S. Dept. of Agric.*, 643 F.3d 1142, 1148 (8th Cir. 2011) ........................................................................................................................3

*Chase v. City of Portsmouth*, 428 F. Supp. 2d 487, 489 (E.D. Va., 2006)................................14

*Children First Found., Inc. v. Legreide*, 373 Fed. Appx. 156, 162 (3d Cir. 2010) .....................12

*Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 350 (5th Cir. 2001)..........................................12

*City of Lakewood v. Plain Dealer Publ. Co.*, 486 U.S. 750, 755-56 (1988)................................7

*Cook v. Gwinnett County Sch. Dist.*, 414 F.3d 1313, 1321 (11th [th] Cir. 2005) ...........................12

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, (1985) ............................4, 5

*Counts v. Cedarville School Dist.*, 295 F. Supp. 996, 999 (W.D. Ark. 2003)................7, 8, 12

*Crighton v. Schuylkill County*, 882 F. Supp. 411, 415 (E.D. Pa. 1995)......................................14

*Denver Area Educ. Tel. Consortium, Inc. v. FCC*, 518 U.S. 727, 754 (1996)............................6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189-
        90 (2000)..................................................................................................................8

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ......................................................................11

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).......................................................5

*Heinkel v. Sch. Bd. of Lee County, Fla.*, 194 Fed. Appx. 604 (11th Cir. 2006)...........................7

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002)...........................................................................11, 12

*Hrdlicka v. Reniff*, 631 F.3d 1044, 1049 (9th Cir. 2011) .............................................................6

*Hunt v. Wash State Apple Adver. Comm'n*, 432 U.S. 333 (1977) .................................................5

*Husain v. Springer*, 494 F.3d 109, 132 (2d Cir. 2007) ..............................................................12

*In re Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 608 (2d Cir. 1988) ..........................5

*Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 687 (1992)....................................4

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989)................................................11

*Joyce v. Armstrong Teasdale LLP*, 635 F.3d 364, 365 (8th Cir. 2011) .......................................3

*Kivanc v. Ramsey*, 407 F. Supp. 2d 270, 273 (D.D.C. 2006)......................................................14

*Lynch v. Leis*, 382 F.3d 642, 646 n.2 (6th Cir. 2004) ................................................................10

*Mainstream Loudoun v. Bd. of Trustees of Loudoun County Library*, 24 F. Supp.
        2d 552, 557-59 (E.D. Va. 1998)..................................................................................3

*Martin v. U.S. EPA*, 271 F. Supp. 2d 38 (D.D.C. 2002) ..............................................................5

*Minarcini v. Strongsville City Sch. Dist.*, 541 F.2d 577, 581-82 (6th Cir. 1976).......................12

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) .................................................................15

*Morgan v. Swanson*, 627 F.3d 170, 182 (5th Cir. 2010)............................................................12

*Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569 (1998) .....................................................4

*Nebraska Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000) ................................................................................................10

*Pratt v. Indep. Sch. Dist. No. 831, Forest Lake, Minn.*, 670 F.2d 771, 776 (8th Cir. 1982) ................................................................................................12

*Princeton Univ. v. Schmid*, 455 U.S. 100 (1982) ....................................................10

*Right To Read Def. Comm. of Chelsea v. Sch. Comm. of City of Chelsea*, 454 F. Supp. 703, 715 n.19 (D. Mass. 1978) ................................................................8

*Rolscreen Co. v. Pella Products of St. Louis, Inc.,* 64 F.3d 1202, 1207 (8th Cir. 1995) ................................................................................................9

*Schanou v. Lancaster County Sch. Dist. No. 160*, 62 F.3d 1040 (8th Cir. 1995) ..........5

*Shuttlesworth v. Birmingham*, 394 U.S. 147, 151 (1969) ..........................................7

*Sund v. City of Wichita Falls, Tex.*, 121 F. Supp. 2d 530, 550 (N.D. Tex. 2000) ..........7, 8

*Tubbs v. Sacramento County Jail*, 2008 WL 4601501, at *2 (Oct. 15, 2008) ................14

*United States v. Am. Library Ass'n*, 539 U.S. 194, 207 (2003) ..................................4

*Utah Animal Rights Coal. v. Salt Lake City Corp.,* 371 F.3d 1248, 1257-58 (10th Cir. 2004) ........................................................................................10

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 756 (1976) ................................................................................................5

*Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) ..................15

*Warner v. Green*, 845 F.2d 179, 182 (8th Cir. 1988) ................................................11

*Warth v. Seldin*, 422 U.S. 490, 511, (1975) ................................................................5

*Watchtower Bible v. Vill. of Stratton*, 536 U.S. 150, 166 (2002) ..............................6, 7

**OTHER**

13A Charles Alan Wright, et al., Federal Practice and Procedure § 3533.3 at 266 (2d ed. 1984) ......................................................................................11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| Parents, Families, and Friends of Lesbians and Gays, Inc., et al. | ) ) ) | |
| | ) | Case No. 2:11-cv-04212 |
| Plaintiffs, | ) ) | |
| v. | ) ) | PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO |
| Camdenton R-III School District, et al. | ) ) ) | DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE |
| Defendants. | ) ) | |

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE**

In their First Amended Complaint, Plaintiffs set forth facts establishing that Defendants

have engaged—and continue to engage—in unconstitutional viewpoint-based discrimination

against speech that is supportive of lesbian, gay, bisexual, and transgender ("LGBT") individuals

and their rights. As the publishers of LGBT-supportive websites, Plaintiffs Parents, Families,

and Friends of Lesbians and Gays, Inc., Dignity, Inc, Matthew Shepard Foundation, and Campus

Pride, Inc. (collectively, the "Organizational Plaintiffs") have standing to challenge Defendants'

viewpoint-based censorship of their speech. And as a student at Defendant Camdenton R-III

School District ("the District" or "Camdenton R-III") who wishes to access LGBT-supportive

websites in the school library, Plaintiff Jane Doe has standing to challenge the District's policy

of relying on an Internet filter that discriminates against speech on the basis of viewpoint. As

discussed in more detail in Section I below, the First Amendment right to freedom of speech

belongs both to the willing speaker and the recipient, and restrictions on that right can be

challenged by either party.  Moreover, Defendants' discriminatory policy of requiring students to seek special permission to access LGBT-supportive websites unconstitutionally burdens Plaintiffs' First Amendment rights regardless of whether such requests are ultimately granted.

Plaintiffs' claims are not moot because Defendants' unconstitutional policies and practices have not changed since this lawsuit was filed.  The Organizational Plaintiffs are still being censored by the District on the basis of the viewpoints their websites express, and Plaintiff Jane Doe still must request special permission to access the websites of the Organizational Plaintiffs and other LGBT-supportive websites.

Furthermore, Plaintiffs have sufficiently alleged claims against Defendant Hadfield in both his official and individual capacity.  Hadfield is liable in his individual capacity because his actions have violated a clearly established right—the right to freedom from viewpoint-based government restrictions on speech in a school library—of which a reasonable person should have known.  While Plaintiffs' claims against Defendant Hadfield in his official capacity may be redundant of Plaintiffs' claims against the District, the Court has discretion to keep the official capacity claims in the case since Hadfield is already subject to claims against him in his individual capacity.

Finally, Plaintiffs have sufficiently alleged facts to show an unconstitutional policy and custom on the part of the District.  The First Amended Complaint sets forth in great detail the District's policy and custom of using an Internet filtering database that blocks access to LGBT-supportive informational websites while allowing access to similar websites that espouse an anti-LGBT viewpoint.  For the purposes of this motion to dismiss, those allegations must be accepted as true, and Defendants' motion should be denied.

**ARGUMENT**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, the court must "accept all facts in the complaint as true and grant all reasonable inferences in favor of the nonmoving party." *Cent. Platte Natural Res. Dist. v. U.S. Dep't of Agric.*, 643 F.3d 1142, 1148 (8th Cir. 2011); *accord Joyce v. Armstrong Teasdale LLP*, 635 F.3d 364, 365 (8th Cir. 2011). Factual allegations need only be more than speculative to be assumed true. *Twombly*, 550 U.S. at 556. "When there are well-pleaded factual allegations, a court should assume their veracity. . . ." *Iqbal*, 19 S. Ct. at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

**I.     Plaintiffs Have Standing to Bring This Lawsuit.**

**A.     The Organizational Plaintiffs Have Standing.**

There is nothing unusual about website publishers challenging the improper censorship of their websites. Indeed, website publishers have served as plaintiffs in many of the leading cases challenging libraries' use of Internet filtering software. *See Mainstream Loudoun v. Bd. of Trustees of Loudoun County Library*, 24 F. Supp. 2d 552, 557-59 (E.D. Va. 1998) (finding that website publishers have standing to challenge library's blocking of their websites); *Bradburn v. N. Cent. Reg'l Library Dist.*, 231 P.3d 166, 171-72 (Wash. 2010) (noting that one of the plaintiffs was the Second Amendment Foundation, whose website was blocked on library's computers); *see also Am. Library Ass'n, Inc. v. United States*, 201 F. Supp. 2d 401, 415-16 (E.D.

Pa. 2002) (noting that several of the plaintiffs were website publishers but not reaching issue of standing), *rev'd on other grounds*, 539 U.S. 194, 207 (2003).

Despite these precedents, the District argues that the Organizational Plaintiffs lack standing because a "library does not acquire Internet terminals in order to create a public forum for Web publishers to express themselves." *United States v. Am. Library Ass'n*, 539 U.S. 194, 207 (2003) (plurality). But that is true *whenever* government property or programs have not been designated as public fora, yet, even when there is no public forum, private speakers have standing to challenge invidious viewpoint discrimination. *See Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 687 (1992) (O'Conner, J., concurring) (explaining that the fact that the government has not created a forum for private speakers to express themselves, "does not mean that the government can restrict speech in whatever way it likes"). For example, in *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788 (1985), the Court held that a charity drive for government employees was not a designated public forum because "[t]he Government did not create the [charity drive] for purposes of providing a forum for expressive activity," *id.* at 805, but the Court nevertheless held that an outside charity group could challenge its exclusion from the charity drive on the basis of its viewpoint, *id.* at 812-13. Similarly, in *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569 (1998), the Court held that the NEA grant program is not a designated public forum because the purpose of the program is not to "indiscriminately encourage a diversity of views from private speakers," *id.* at 586 (internal quotation marks omitted), but the Court nevertheless held that an artist could challenge the NEA's denial of funding on the basis of viewpoint, *id.* at 586-87. The *ALA* plurality specifically

compared Internet access to the programs at issue in *Cornelius* and *Finley, see ALA*, 539 U.S. at

205-07; if speakers had standing in those cases, they also have standing here.[1]

Even though the Organizational Plaintiffs' websites have been unconstitutionally

censored by Camdenton R-III, the District contends that this censorship may be challenged only

by the students who wish to receive information, not the speakers who wish to send it. The

District is incorrect. To the contrary, a listener's "right to receive ideas follows ineluctably from

the sender's First Amendment right to send them." *Bd. of Educ., Island Trees Union Free Sch.

Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) (plurality). The right to receive information is

thus "entirely derivative" of the independent rights of the speaker. *In re Application of Dow

Jones & Co., Inc.*, 842 F.2d 603, 608 (2d Cir. 1988); *accord Martin v. U.S. EPA*, 271 F. Supp. 2d

38 (D.D.C. 2002). The First Amendment right belongs both to the willing speaker and the

recipient, and restrictions on that right can be challenged by either party. *See Va. State Bd. of

Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 756 (1976) ("[T]the protection

afforded is to the communication, to its source and to its recipients both.").[2]

The District's argument that its policy for unblocking websites somehow deprives

Plaintiffs of standing should be rejected. The District argues that the Organizational Plaintiffs

have suffered no harm because their websites could purportedly be unblocked upon request. But

---

[1] Amici are therefore incorrect when they assert that speakers have no standing unless "forum analysis" applies. *See* Amicus Br. at 6-7. *Finley* did not purport to apply "forum analysis" but nevertheless allowed speakers to challenge the government's burden on their speech through invidious viewpoint-discriminatory funding decisions.

[2] The amici incorrectly assert that the Organizational Plaintiffs have standing only if one of their individual members has standing in his or her own right. *See* Amicus Br. at 7 (citing *Hunt v. Wash State Apple Adver. Comm'n*, 432 U.S. 333 (1977)). The organizations are not claiming to have associational standing; they are suing based on harm to their own First Amendment rights. *See Warth v. Seldin*, 422 U.S. 490, 511, (1975) ("There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy."); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). Because the Organizational Plaintiffs are suing on their own behalf based on interference with their own speech, amici's analogy to the derivative standing of a parent discussed in *Schanou v. Lancaster County Sch. Dist. No. 160*, 62 F.3d 1040 (8th Cir. 1995), is misplaced.

a discriminatory viewpoint-based prior restraint is itself an unconstitutional burden on Plaintiffs' ability to communicate with students. *See Watchtower Bible v. Vill. of Stratton*, 536 U.S. 150, 166 (2002); *Denver Area Educ. Tel. Consortium, Inc. v. FCC*, 518 U.S. 727, 754 (1996). The District also argues that the Organizational Plaintiffs cannot prove that any particular student has sought to access their websites (although the District does not provide any evidence indicating that students have never tried to do so). But "[a] First Amendment interest in distributing and receiving information does not depend on a recipient's prior request for that information." *Hrdlicka v. Reniff*, 631 F.3d 1044, 1049 (9th Cir. 2011); *accord Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 80 (1983) (Rehnquist, J., concurring). Finally, the injury to Plaintiffs is not lessened by the fact that a few other LGBT-supportive websites have not yet been included in URL Blacklist's database and are therefore not currently blocked by the District. "It hardly answers one person's objection to a restriction on his speech that another person, outside his control, may speak for him." *Ark. Writers Project Inc. v. Ragland*, 481 U.S. 221, 231 (1987) (internal quotation marks and citation omitted).

In any event, because Plaintiff Jane Doe indisputably has standing to challenge the District's unconstitutional censorship of library resources, this Court may proceed to the merits without resolving whether the Organizational Plaintiffs have standing. *See ALA*, 201 F. Supp. 2d at 416 n.3.

**B.  Jane Doe Has Standing.**

As a student currently enrolled in the Camdenton R-III school district, Plaintiff Jane Doe has standing to challenge Defendants' viewpoint-based censorship of Internet library materials. *See* Pls.' Supp. Suggestions in Support of Mot. for Prelim. Injunction at 2 (collecting cases). The District argues that Jane Doe has not suffered an injury in fact because she has not alleged that

she has specifically requested access to an LGBT-supportive website and been denied. But the underlying policy of requiring students to request specific permission to access LGBT-supportive viewpoints -- but not other viewpoints on the same subjects -- is itself a significant burden on Doe's First Amendment rights. A Plaintiff does not have to request permission and be denied access in order to challenge a viewpoint-based prior restraint. *See Watchtower Bible*, 536 U.S. at 166; *City of Lakewood v. Plain Dealer Publ. Co.*, 486 U.S. 750, 755-56 (1988); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151 (1969) ("The Constitution can hardly be thought to deny to one subjected to the restraints of [a licensing law] the right to attack its constitutionality, because he has not yielded to its demands" (internal quotation marks and citation omitted)).[3]

Moreover, even if Doe requested that sites be unblocked and her request was granted, she still would have standing to challenge the unconstitutional stigma that the District's policy places on particular disfavored viewpoints. *See Counts v. Cedarville School Dist.*, 295 F. Supp. 2d 996, 999 (W.D. Ark. 2003) (holding that student had standing to challenge school's requirement of parental consent to view Harry Potter book even though the student had received parental permission and could check out the book at any time); *see also Sund v. City of Wichita Falls, Tex.*, 121 F. Supp. 2d 530, 551 n.23 (N.D. Tex. 2000).

In addition, Doe and other students cannot request that particular websites be unblocked unless they know what websites are being censored and what information those websites contain. It is impossible for Doe and other students to "literally explore the unknown, and discover areas of interest and thought," *Pico*, 457 U.S. at 869, if the student has to know in advance the precise

---

[3] The one case the District cites in support of its theory that Doe lacks standing, *Heinkel v. Sch. Bd. of Lee County, Fla.*, 194 Fed. Appx. 604 (11th Cir. 2006) (unpublished), held that a former student lacked standing to bring an *as applied* challenging to the school's speech restriction but noted that if the student had still attended the school, he would have standing to bring a facial challenge.

materials she must request access to.  *See Sund*, 121 F. Supp. 2d at 550 (explaining that removing books from the children's section burdened right to receive ideas because even though books could still be located in the adult section, parents or children "who simply wish to browse in the children's sections of the Library will never find the censored books"); *Counts*, 295 F. Supp .2d at 999 n.2 (explaining that restriction of access on Harry Potter books burdens access because "browsers will not find the book on the shelves and those unaware of its existence would not know to ask for permission to check it out"); *Right To Read Def. Comm. of Chelsea v. Sch. Comm. of City of Chelsea*, 454 F. Supp. 703, 715 n.19 (D. Mass. 1978) (concluding that students' rights were violated even though "plaintiffs did not prove that a single living person has ever exhibited an interest in reading this material and has been prevented from doing so by the actions of the Chelsea School Committee").

For all these reasons, Plaintiff Jane Doe has standing.

## II.     Plaintiffs' Claims Are Not Moot Because the District Continues to Employ Filtering Software That Unconstitutionally Discriminates on the Basis of Viewpoint.

Defendants suggest that Plaintiffs' claims are moot.  This assertion appears to be based on the notion that the policies codified at a recent school board meeting cure the constitutional violation.  But, as explained above, the District's unblocking policies do not cure the substantial burden that the discriminatory URL Blacklist database places on Plaintiffs' First Amendment rights to send and receive LGBT-supportive viewpoints.  The case is thus not moot for the same reasons Plaintiffs have standing.  The Supreme Court has repeatedly stated that "the doctrine of mootness can be described as 'the doctrine of standing set in a time frame:  The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'"  *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 189-90 (2000) (citations omitted).  While this description of mootness "is not

comprehensive," it suffices in this case because, even according to Defendants, nothing has changed since the case was filed. *Id.* at 190. A case becomes moot "[w]hen, during the course of litigation, the issues presented in a case lose their life because of the passage of time or a change in circumstances[.]" *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (quotations omitted). That has not happened here. The Organizational Plaintiffs are still speakers against whom Defendants are engaging in viewpoint discrimination. Plaintiff Jane Doe is still a student in the Camdenton School District who is prevented from accessing information that is supportive of LGBT persons because of Defendants' viewpoint-based discrimination. Defendants insist there has been no change to their policies and continue to use URL Blacklist's database and its sexuality filter. Defendants' policies are what Plaintiffs are challenging; the existence of written versions of the policies does not render this case moot.

The fact that nothing has changed about the relationship between the parties since this case commenced makes this case distinguishable from those cited by Defendants. In *Besette v. AT&T Corp.*, 2006 WL 2927561 (W.D. Mo. Oct. 11, 2006), the employee plaintiff sought "a ruling that a limitation to mail-order usage for obtaining contraceptives covered by [her employer's] health coverage is unlawfully discriminatory against women, and seeks to have the limitation enjoined." The Court found the case moot after the plaintiff was no longer employed by the defendant. Likewise, *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, merely observed where "there was no longer any relationship between the parties, the complaint for a declaratory judgment was moot." 64 F.3d 1202, 1207 (8th Cir. 1995). In this case, there has been no change in the relationships between Plaintiffs and Defendants.

Just as the relationship between the parties has not changed, the policies at issue in this case, including Defendants' alleged policy of allowing students to request a website be

unblocked, have not changed either. This fact distinguishes this case from *Princeton Univ. v. Schmid*, 455 U.S. 100 (1982). In *Schmid*, the case was moot because the defendant had "substantially amended" the challenged regulations. *Id.* at 103. Defendants contend that they have not made changes to their policies other than to write them down. These policies are unconstitutional regardless of whether they are written down or not.

At bottom, Defendants seem to be arguing that Plaintiffs' claims are not ripe because Jane Doe must first ask for access to the websites and wait until the District denies her request before filing suit. But there is no need for Plaintiffs to make an unblocking request when the need to make such requests is the very thing they are challenging. The infringement of the constitutional rights of Jane Doe and the Organizational Plaintiffs is happening now; thus, their challenge to the policies causing the harm is ripe. "While elegant-sounding in theory, judicial ripeness often proves something of a cantaloupe." *Neb. Pub. Power Dist. v. MidAm. Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000). A case is ripe if it is "fit for judicial resolution" and "delayed review will result in significant harm." *Id.* "A party need not wait for actual harm to occur." *Id.* Here, however, the harm has occurred and is ongoing. Defendants are imposing a burden on Jane Doe's ability to access the Organizational Plaintiffs' websites and are doing so because of the viewpoint those websites express. Even if the websites are ultimately unblocked, the discriminatory burden placed on LGBT-supportive viewpoints is itself a violation of the First Amendment. Defendants are already taking the exact action about which Plaintiffs complain.

For these reasons, Plaintiffs claims are not moot.[4]

---

[4] Claims also are not moot where, as in this case, there is a request for nominal damages for past constitutional violations. A valid claim for nominal damages to redress a constitutional harm is sufficient to sustain justiciability. *See, e.g., Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1257-58 (10th Cir. 2004) (complaint for nominal damages satisfies case or controversy requirements even when claims for injunctive relief are mooted by repeal)**;** *Bernhardt v. County of Los Angeles,* 279 F.3d 862, 871 (9th Cir. 2002) ("possible entitlement to nominal damages creates a continuing live controversy"); *Lynch v. Leis*, 382 F.3d 642, 646 n.2 (6th Cir. 2004)(live claim for nominal damages sufficient to establish standing and defeat mootness); *see also* 13A Charles Alan Wright, et al.,

**III.    Plaintiffs Have a Claim Against Defendant Hadfield in His Individual Capacity Because He Employed Viewpoint-Discriminatory Internet Filtering Software in Violation of Plaintiffs' Clearly Established Constitutional Rights.**

Defendant Hadfield is not entitled to qualified immunity for his actions in using, and continuing to use, an Internet filter that unconstitutionally suppresses speech on the basis of viewpoint.  The Supreme Court has held that qualified immunity applies where a government official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks omitted).  Qualified immunity thus "'accommodates competing social interests by ensuring that officials who "knowingly violate the law" are held accountable, while officials who reasonably exercise their discretion' are protected."  *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989) (quoting *Warner v. Graham*, 845 F.2d 179, 182 (8th Cir. 1988)).  "Actual knowledge of the law is not required; if the law is clearly established, the qualified immunity defense will fail unless the official 'claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard.'"  *Id.* (quoting *Harlow*, 457 U.S. at 818-19).

In this case, the right to freedom of speech without being subjected to viewpoint-based censorship is a right that has been clearly established in the context of public schools and, particularly, school libraries.  *See Pico*, 457 U.S. at 870-872 (plurality) (local school boards may not remove books from school library shelves simply because they dislike the ideas contained therein; while a school board possesses significant discretion to determine the content of its

---

Federal Practice and Procedure § 3533.3 at 266 (2d ed. 1984) ("A valid claim for nominal damages should avoid mootness").

school library, "that discretion may not be exercised in a narrowly partisan or political manner");

*Pratt v. Indep. Sch. Dist. No. 831, Forest Lake, Minn.*, 670 F.2d 771, 776 (8th Cir. 1982) (school

board could not ban the showing of a film based on the viewpoint expressed therein); *Minarcini*

*v. Strongsville City Sch. Dist.*, 541 F.2d 577, 581-82 (6th Cir. 1976) (school board could not

remove books from school library based on the viewpoints they expressed); *Counts*, 295 F. Supp.

2d at 1002-05 (school board could not restrict access to Harry Potter books in school library

based on disagreement with the ideas expressed therein). A reasonable person and, in particular,

a reasonable school superintendent, would have known of this clearly established right. Thus,

Defendant Hadfield is not entitled to qualified immunity.[5]

The fact that the viewpoint-discrimination related to online resources instead of physical

library resources makes no difference for purposes of qualified immunity. "[O]fficials can still

be on notice that their conduct violates established law even in novel factual circumstances."

*Hope*, 536 U.S. at 741. In determining whether the law is clearly established, the Court's task is

not to "hunt for prior cases with precisely the same set of facts" but rather to ask "whether the

official had fair notice [his or] her conduct was unconstitutional." *Bonner v. Outlaw*, 552 F.3d

673, 679 (8th Cir. 2009) (internal quotation marks and citations omitted). Because the Internet is

merely a "technological extension of the book stack," *ALA*, 539 U.S. at 207 (internal quotation

---

[5] Numerous federal courts have held that the right to freedom from viewpoint-based government suppression of speech is a clearly established right that precludes a defense of qualified immunity by a government official. *See Morgan v. Swanson*, 627 F.3d 170, 182 (5th Cir. 2010) (suppression of student-to-student distribution of literature on the basis of religious viewpoint is a violation of clearly established First Amendment rights); *Children First Found., Inc. v. Legreide*, 373 Fed. Appx. 156, 162 (3d Cir. 2010) (an allegation of viewpoint discrimination by a government agency is sufficient to allege a violation of clearly established rights); *Husain v. Springer*, 494 F.3d 108, 132 (2d Cir. 2007) (college president violated clearly established right when she nullified a student election based on viewpoint expressed in the student newspaper); *Cook v. Gwinnett County Sch. Dist.*, 414 F.3d 1313, 1321 (11th Cir. 2005) ("[E]ven in a non-public forum, the law is clearly established that the state cannot engage in viewpoint discrimination. . . ."); *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 350 (5th Cir. 2001) ("It is well settled that viewpoint discrimination is a clearly established violation of the First Amendment in any forum").

marks and citations omitted), Defendant Hadfield was plainly on notice that Camdenton R-III could not suppress websites in a viewpoint-discriminatory manner.

Defendants mistakenly argue in favor of qualified immunity by asserting that CIPA requires Hadfield to block student access to pornographic material and that some inadvertent overblocking of websites is permissible from a constitutional standpoint. Defs.' Suggestions in Supp. of Mot. to Dismiss Pls.' Compl. with Prejudice ("Defs.' Br.") at 11-12. Defendants' argument misses the point. Plaintiffs do not claim that the District should allow students access to pornographic material or that inadvertent overblocking is *per se* unconstitutional. Rather, Plaintiffs' argument is that they have a clearly established right to freedom of speech without being subjected to viewpoint-based censorship.[6] Like other school districts across the country, Defendants can both comply with CIPA and block websites in a viewpoint-neutral manner.

Defendant Hadfield cannot argue that he was not given "'fair warning that [his] alleged conduct was unconstitutional.'" *Bonner*, 552 F.3d at 679 (quoting *Brown v. Fortner*, 518 F.3d 552, 561 (8th Cir. 2008)). As alleged in the First Amended Complaint, the ACLU informed Defendant Hadfield of the viewpoint-discriminatory nature of the URL Blacklist "sexuality" filter no later than May 24, 2011. First Am. Compl. at ¶ 59. Hadfield's continued use of that filter, even after being informed of its viewpoint-discriminatory nature, is a violation of a clearly established constitutional right of which a reasonable person would have known. Therefore, Plaintiffs have successfully alleged a claim against Defendant Hadfield in his individual capacity, and his argument for qualified immunity should be rejected.

---

[6] Furthermore, contrary to Defendants' argument, the Amended Complaint alleges much more than inadvertent overblocking Plaintiffs allege that URL Blacklist's "sexuality" filter is viewpoint-discriminatory because it systematically blocks websites supportive of LGBT individuals and their rights while allowing access to anti-LGBT sites. First Am. Compl. at ¶¶ 30-58. Far from inadvertently blocking a stray LGBT-supportive website here and there, the URL Blacklist "sexuality" filter blocks a long list of LGBT-supportive sites that are not sexually explicit but purely informational in nature. *Id.* at ¶ 47.

**IV.    The Court Has Discretion Not To Dismiss Claims Against Defendant Hadfield in His Official Capacity.**

This Court should exercise its discretion and deny Defendants' request to dismiss the official-capacity claims against Defendant Hadfield.  As Defendants note, when a Plaintiff brings a claim against a municipality under *Monell*, a separate claim against an individual in his or her official capacity may be dismissed as redundant.  *See* Def. Br. at 10-11 (citing *Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1182 (8th Cir. 1998)).  But dismissal is not mandatory:  "Although an action brought against both the entity and the public official in his or her official capacity is redundant, the Court ultimately has discretion in deciding whether to dismiss the claims against the individual defendants."  *Brown v. Montgomery County*, 2005 WL 1283577, at *4 (E.D. Pa. May 26, 2005); *accord Chase v. City of Portsmouth*, 428 F. Supp. 2d 487, 489 (E.D. Va., 2006); *Kivanc v. Ramsey*, 407 F. Supp. 2d 270, 273 (D.D.C. 2006); *Tubbs v. Sacramento County Jail*, 2008 WL 4601501, at *2 (Oct. 15, 2008).

As several courts have explained:  "Motions to dismiss under Rule 12(b)(6) test the validity of a complaint.  Simply because a claim is redundant does not necessarily mean that the complaint is invalid."  *Crighton v. Schuylkill County*, 882 F. Supp. 411, 415 (E.D. Pa. 1995); *accord Chase*, 428 F. Supp. 2d at 489; *Brown*, 2005 WL 1283577, at *4.  Even when redundant of a claim against the municipality, naming individuals in their official capacities can serve an important public purpose by "provide[ing] a certain level of public accountability" when an individual's actions cause a municipality to violate federal law.  *Chase*, 428 F. Supp. 2d at 490; *Tubbs*, 2008 WL 4601501, at *2.  Indeed, "[a] significant amount of case law shows government officials named in their official capacities alongside the entities for which they are associated, especially where the alleged violations of a plaintiffs' rights occurred because of specific individuals."  *Chase*, 428 F. Supp. 2d at 489.

In the circumstances of this case, retaining the official-capacity claims would not impose any additional burden on Defendant Hadfield because Plaintiffs have also sued Defendant Hadfield in his individual capacity. As a result, even if the official-capacity claims were dismissed, Defendant Hadfield would still remain a party in this case. In the event that the individual-capacity claims against Defendant Hadfield are ultimately dismissed at some later date, Defendant Hadfield could seek dismissal of the official-capacity claims at that time. *See Artis*, 161 F.3d at 1182 (affirming dismissal of official-capacity claim where Defendant had not also been sued in an individual capacity); *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (same).

For all these reasons, the Court should exercise its discretion and decline to dismiss the official-capacity claims against Defendant Hadfield.

## V. Plaintiffs Have Alleged Sufficient Facts Regarding the District's Unconstitutional Internet Filtering Custom and Policy to State a Claim Upon Which Relief May Be Granted.

Plaintiffs have alleged sufficient facts in the First Amended Complaint to show that the District has implemented and executed an unconstitutional policy or custom. The District does not dispute that it has a custom, policy, or practice of using URL Blacklist to block websites categorized by URL Blacklist as "sexuality." Instead, it argues that the custom, policy, or practice does not violate Plaintiffs' constitutional rights. That is a dispute about the substantive merits of Plaintiffs' First Amendment claims -- not a dispute about whether the requirements of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), have been satisfied.

Plaintiffs have clearly pled that Defendants' policy, custom, or practice of using URL Blacklist violates Plaintiffs' constitutional rights by engaging in impermissible viewpoint discrimination against LGBT-supportive websites. The First Amended Complaint alleges that

the District "use[s] an Internet filtering program that blocks websites supporting or advocating

on behalf of lesbian, gay, bisexual, and transgender ("LGBT") but permits access to websites

that condemn homosexuality or oppose legal protections for LGBT people."  First Am. Compl.

at 1.  Plaintiffs specifically allege that the District's Internet filter uses a database of categorized

web addresses from URL Blacklist, *id.* at ¶ 16, and that "the District has chosen to rely on

custom-built Internet filtering software based on URL Blacklist that blocks all websites included

in the 'sexuality category,' not just those containing sexually explicit content."  *Id.* at ¶ 26.

Plaintiffs then allege in great detail the manner in which the URL Blacklist "sexuality" filter

discriminates against websites with an LGBT-supportive viewpoint.  *Id.* at ¶¶ 30-58.  Plaintiffs

also allege that the ACLU informed the District of the discriminatory nature of the "sexuality"

filter, but the District has chosen not to deactivate the filter or use a different, viewpoint-neutral

filter.  *Id.* at ¶¶ 59-63.  Thus, Plaintiffs have clearly and specifically alleged that the District has a

custom, policy, and/or practice of using an Internet filter that discriminates against speech on the

basis of viewpoint.

In response to these allegations, Defendants claim that the District has a practice, policy

and custom of complying with federal law which requires that the District block websites that are

inappropriate for minors.  Defs.' Br. at 13.  Whether the District has such a practice, policy, or

custom is irrelevant to Plaintiffs' claims.  Plaintiffs are not arguing that the District may not use

any filter at all but, rather, that the District may not use a filter that discriminates on the basis of

viewpoint.  Plaintiffs have alleged that there are "better, more reputable Internet filtering services

that categorize on a viewpoint-neutral basis and that distinguish websites with sexually explicit

content from websites that discuss religious, legal, political and social issues relating to

sexuality." First Am. Compl. at ¶ 25. Like other school districts across the country, Defendants can comply with federal law without violating Plaintiffs' First Amendment rights.

Defendants also point to alleged procedures for allowing District students to request the unblocking of specific websites. As discussed above in connection with Plaintiffs' standing, such a policy does not cure the discriminatory nature of the District's Internet filter. As Plaintiffs have alleged in the First Amended Complaint, the unblocking of websites upon request is inadequate to protect Plaintiffs' free speech rights because "URL Blacklist is revised and updated on a continuing basis, and, as a result, new pages and new content will likely be blacklisted and blocked in the future." First Am. Compl. at ¶ 56. Further, requiring organizations or students to make requests for websites to be unblocked "places a burden on Plaintiffs' speech that is not placed on anti-LGBT websites or students who desire to access anti-LGBT websites. The result is a prior restraint for the pro-LGBT viewpoint but not the anti-LGBT viewpoint." *Id.* at ¶ 57.

Plaintiffs have sufficiently alleged facts showing that the District has a custom, policy, and/or practice of using an Internet filter that discriminates against speech on the basis of viewpoint, in violation of Plaintiffs' First Amendment rights. Those facts must be accepted as true for the purpose of this motion, and Defendants' motion to dismiss should be denied.

## <u>CONCLUSION</u>

Plaintiffs have standing to pursue the claims at issue in this lawsuit, Plaintiffs' claims are not moot, and Plaintiffs have sufficiently alleged causes of action against both the District and Hadfield. Defendants' motion to dismiss should be denied.

Respectfully Submitted,

THOMPSON COBURN LLP


By_____/s/  Mark Sableman_____

Mark Sableman #36276
A. Elizabeth Blackwell #50270

One U.S. Bank Plaza
St. Louis, Missouri 63101
314-552-6000
FAX 314-552-7000

msableman@thompsoncoburn.com
eblackwell@thompsoncoburn.com

Anthony E. Rothert, # 44827
Grant R. Doty, # 60788
American Civil Liberties Union of Eastern Missouri

454 Whittier Street
St. Louis, Missouri 63108
314-652-3114
FAX 314-652-3112

tony@aclu-em.org
grant@aclu-em.org

Joshua A. Block
James Esseks
LGBT Project
ACLU Foundation
125 Broad Street, Floor 18
New York, New York  10004
(212) 549-2600
FAX 212-549-2650

jblock@aclu.org
jesseks@aclu.org

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2011, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which sent notification of such filing to the

following:

Thomas A. Mickes
Betsey A. Helfrich
MICKES GOLDMAN O'TOOLE, LLC
555 Maryville University Drive
Suite 240
St. Louis, Missouri 63141

*Attorneys for Defendants*
*Camdenton R-III School District*
*and Timothy E. Hadfield*

Michael Whitehead
WHITEHEAD LAW FIRM, LLC
City Center Square
1100 Main Street, Suite 2600
Kansas City, Missouri 64105-5194

Jeremy D. Tedesco
ALLIANCE DEFENSE FUND
15100 North 90th Street
Scottsdale, Arizona 85260

David A. Cortman
ALLIANCE DEFENSE FUND
1000 Hurricane Shoals Rd., N.E.
Suite D-600
Lawrenceville, GA 30043

Travis C. Barham
ALLIANCE DEFENSE FUND
12 Public Square
Columbia, Tennessee 38401

*Attorneys for Amici Curiae*
*Alliance Defense Fund and*
*Missouri Family Policy Council*

_____/s/ Mark Sableman_____